OPINION OF THE COURT
Arthur D. Spatt, J.

Background

By summons and complaint dated September 26, 1979, plaintiff herein, Edwin Young, president and business manager of Local 55, Sheet Metal Workers’ International Association, and six employees (negotiating committee) of the H. H. Smith Shop, instituted the present action seeking a judgment permanently enjoining the defendants, Production Workers Welfare Fund and its two trustees, from terminating the membership of approximately 200 H. H. Smith employees in the subject welfare fund. The *693 commencement of the action followed the receipt by president Young of a letter on September 24,1979, which reads as follows:
“Dear Mr. Young:
“Please be advised that the Trustees of the Production Workers’ Welfare Fund (Moore and Borod) in assessing the contribution payments submitted by Herman H. Smith Inc. on behalf of its employees, pursuant to its Collective Bargaining Agreement with Local Union #55, find said rate grossly inadequate to justify continued Welfare coverage of said employees/members.
“Effective 12:01 A.M., September 30, 1979, all Welfare coverage will cease.”
During the January, 1980 term, this action came before me for trial without a jury. During the course of the trial, which took approximately five days, the testimony adduced by the parties related almost exclusively to the proof or refutation of plaintiffs’ contention, as set forth in paragraph seven of the complaint, which reads as follows: “7. That the determination of the Board of Trustees for the International Welfare Fund to terminate the health and welfare coverage being received by the production and maintenance employees of Smith, and their spouses and dependants was motivated by bad faith, fraud and arbitrary and capricious conduct.”
At trial’s end, the court reserved decision, affording the parties leave to submit memoranda in support of their respective claims.
By memorandum decision dated January 9, 1981, this court held, in pertinent part, as follows: “The Court finds that the plaintiffs have proven, by a fair preponderance of the credible evidence, indeed, by the overwhelming weight of the credible evidence, that the decision of the trustees terminating the membership of the Smith employees in the Production Workers Welfare Fund was arbitrary, capricious and the product of ‘bad faith’. Such decision should not and will not be permitted to stand. Further, the counterclaim is dismissed.”
In reaching this conclusion, the court reviewed, considered and applied, the fiduciary duties of and standards *694 applicable to a fiduciary as established by the Employment Retirement Income Security Act of 1974 (ERISA) (US Code, tit 29, § 1001 et seq.) and by the common law, and as applied by the courts of this and other jurisdictions. Specifically, the court stated the following: “Clearly, the trustees, or fiduciaries, have a duty not to deny or terminate benefits to a beneficiary of the Fund in an arbitrary or capricious manner or in bad faith. Further, the trustees may not, by virtue of their own negligent or bad faith failure to do an act which, as fiduciaries, they should have done, rely upon the consequences produced by that failure in denying or terminating benefits to members. See Mitzner v. Jarcho, supra; Moch v. Durkin, 31 AD2d 995, 297 N.Y.S. 2d 865 (3d Dept. 1969)”.
In addition to granting a permanent injunction as demanded in the complaint, the court noted that plaintiffs, in their brief, requested certain other relief. As a result of such requests, the court posed certain questions to counsel — and requested written briefs and oral argument thereon.
Further, noting that defendants, as a “Second Defense” set forth in the answer, had asserted this court’s alleged lack of “subject matter jurisdiction”; and further noting the absence of any argument by defendants in support of that contention by way of pretrial motion, brief or oral argument, the court noted as follows: “Defendant has offered no legal argument in support of this contention. In fact, defendant’s brief makes no mention of the jurisdictional issues. It would appear, however, that 29 USCA §1132 (e) (1) does vest this Court with jurisdiction in this matter. As cited in the body of this decision, many decisions of courts of the state have addressed actions similar to the instant one. Therefore, the Court finds that it does have subject matter jurisdiction.”
Thereafter, via a brief dated February, 1981, submitted in response to the above-cited five posttrial questions, defendants raised, for the first time, the alleged “limited state court jurisdictional authority imposed by ERISA” and requested the court to “clarify the scope of the permanent injunction”.
At oral argument following submission of the posttrial briefs, counsel for defendants formally moved this court for *695 an order dismissing the complaint on the ground that this court lacks subject matter jurisdiction. (See CPLR 3211, subd [a], par 7.) As the defense of “lack of subject matter jurisdiction” may not be waived, this court agreed to entertain such motion. (See Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3211.11, p 17; Lacks v Lacks, 41 NY2d 71; Majique Fashions v Warwick & Co., 67 AD2d 321.)
All parties have submitted briefs with respect to the motion to dismiss. All other issues are being held in abeyance pending this decision as to jurisdiction.

Statutes at Issue

Whether this court has jurisdiction over the subject matter of this action is contingent upon the construction to be accorded certain relevant subdivisions of ERISA, as well as upon the relationship to said subdivisions of subdivision (a) of section 301 of the Labor Management Relations Act (LMRA) (US Code, tit 29, § 185, subd [a]).
Part 5 of subtitle B of subchapter 1 of ERISA, entitled “Administration and Enforcement”, sets forth, inter alia, the availability to a plan participant beneficiary or the Secretary of Labor, of a civil action to enforce the provisions of ERISA and/or the terms of the plan itself. Further, the appropriate forum for the bringing of each specific type of action is also designated. Addressing the issue of the appropriate forum for prosecuting a civil action, section 1132 (subd [e], par [1]) of title 29 of the United States Code, provides as follows: “Except for actions under subsection (a) (1) (B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a) (1) (B) of this section.”
The above section dovetails with the general “Federal pre-emption” provision in ERISA which reads as follows:
“§ 1144. Other laws
“(a) Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this *696 chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.”
As per section 1132 (subd [e], par [1]), section 1132 (subd [a], par [1], cl [B]) sets forth the extent of the concurrent jurisdiction, albeit limited, of the State courts vis-á-vis civil actions under ERISA, as follows:
“§ 1132. Civil enforcement
“(a) A civil action may be brought —
“(1) by a participant or beneficiary * * *
“(B) to recover benefits due to him under the terms of his plan to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan”.
Section 1132 (subd [a], pars [2], [3]), however, sets forth other civil actions available to a participant under ERISA which, by the terms of section 1132 (subd [e], par [1]), may be brought only in the Federal District Court. Section 1132 (subd [a], pars. [2], [3]) provides as follows:
“(a) A civil action may be brought * * *
“(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;
“(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan”.
Section 1109, referred to in section 1132 (subd [a], par [2]), provides, in pertinent part, as follows:
“§1109. Liability for breach of fiduciary duty
“(a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to *697 the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.” (Emphasis supplied.)
The “responsibilities, obligations, or duties imposed upon fiduciaries” by ERISA referred to in section 1109 are set forth in section 1104, in pertinent part, as follows:
“§1104. Fiduciary duties
“(a) (1) Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and —
“(A) for the exclusive purpose of:
“(i) providing benefits to participants and their beneficiaries; and
“(ii) defraying reasonable expenses of administering the plan;
“(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
“(C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
“(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter”.
Finally, as will be discussed herein, plaintiffs argue that, in addition to having jurisdiction under the terms of ER-ISA (US Code, tit 29, § 1132, subd [a], par [1], cl [B]), this court also has jurisdiction pursuant to subdivision (a) of section 301 of the Labor Management Relations Act (LMRA) (US Code, tit 29, § 185, subd [a]), which provides as follows:
*698 “§185. Suits by and against labor organizations
“(a) Suits for violation of contracts between an employer and organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.”

Conclusion

Upon consideration of the arguments of both parties, and upon a review of the applicable cases and statutory law, the court finds that it does lack subject matter jurisdiction over this action. As such, the court is constrained to recall its memorandum decision dated January 9,1981; to vacate the temporary restraining order which has continued in effect to this date; and the court hereby dismisses the complaint, pursuant to CPLR 3211 (subd [a], par 2).
The ERISA statute, the legislative history surrounding its enactment and “[t]he thrust of all the Federal decisions dealing with Employee Retirement Income Security Act clearly establishes Federal domination over the establishment, conduct, supervision and regulation of pension and retirement [and welfare] plans covered by the statute.” (National Bank of North Amer. v International Brotherhood of Elec. Workers Local No. 3, 93 Misc 2d 590, 594, affd 69 AD2d 679.) Indeed, it has been held that subdivision (a) of section 1144 of ERISA evinces Congress’ intent “to establish pension [and welfare] plan regulation as exclusively a federal concern”. (See Alessi v Rayhestos-Manhattan, Inc., 451 US 504, 523.) The “pre-emption is nearly total”, excluding “all State participation in the regulation of employee benefit plans.” (See Goldstein v Mangano, 99 Misc 2d 523, 530; Marshall v Chase Manhattan Bank, 558 F2d 680; Wayne Chem. v Columbus Agency Serv. Corp., 426 F Supp 316; Hewlett-Packard Co. v Barnes, 425 F Supp 1294.)
The total pre-emption of Federal law, which followed much Congressional debate (see, e.g., Hewlett-Packard Co. v Barnes, supra, pp 1298-1299), reflects not only a concern for the theoretical “superior federal interest” in the regula *699 tion of covered plans which are recognized as having a nationwide impact, but also reflects a pragmatic interest in consistency and simplicity. As stated by Congressman Dent, Chairman of the Subcommittee on Labor of the House Committee on Education and Labor: “Finally I wish to make note of what is to many the crowning achievement of this legislation, the reservation to Federal authority the sole power to regulate the field of employee benefit plans. With the preemption of the field, we round out the protection afforded participants by eliminating the threat of conflicting and inconsistent State and local regulation ” (120 Cong Rec 29197 [1974]; emphasis supplied.)
Further, the commentary of Senator Javits on the conference version of the ERISA bill with respect to the extent and consequences of Federal pre-emption (120 Cong Rec 29942) is as follows: “In view of Federal preemption, State laws compelling disclosure from private welfare or pension plans, imposing fiduciary requirements on such plans, imposing criminal penalties on failure to contribute to plans — unless a criminal statute of general application * * * will be superseded. It is also intended that a body of Federal substantive law will be developed by the courts to deal with issues involving rights and obligations”.
Thus — as the parties to the instant lawsuit agree — even in those limited situations, discussed below, where State courts do have jurisdiction of ERISA actions, such State courts must apply the body of “common law” as created by the Federal courts and/or established by ERISA. (Cf. Dowd Box Co. v Courtney, 368 US 502; Textile Workers v Lincoln Mills, 353 US 448, 456; see, also, Cowan v Keystone Employees Profit Sharing Fund, 586 F2d 888, 893.)
In line with this policy of total Federal pre-emption, Congress intentionally markedly restricted access to State courts by the parties to the trust instrument. (See US Code, tit 29, § 1132, subd [e], par [1]; Trustees of Retirement Benefit Plan v Equibank, 487 F Supp 58; Morrissey v Curran, 567 F2d 546, 549; see, generally, Mamorsky, Employee Benefits Law, Erisa and Beyond, § 12.09.) Concurrent jurisdiction is vested in the State courts only with respect to a civil action commenced by a participant or *700 beneficiary seeking to recover or clarify his rights to benefits “under the terms of the plan”, or to enforce his rights “under the terms of the plan”. (US Code, tit 29, § 1132, subd [a], par [1], cl [B].) Excluded from this “exception” is any action wherein the participant or beneficiary seeks to challenge the validity of a portion of a plan itself; or who seeks a construction of the ERISA statute itself. (See Guthrie v Dow Chem. Co., 445 F Supp 311.) Similarly, legislative history, specifically House Conference Report No. 93-1280 of 1974 (US Code Cong & Admin News, vol 2, pp 5106-5107), makes clear that Congress intended to exclude from section 1132 (subd [a], par [1], cl [B]) exception any action seeking relief from a breach of a fiduciary duty or any action wherein the participant or beneficiary seeks to enforce or clarify benefits and rights as set forth in title 1 of ERISA. In this regard, the afore-mentioned House Conference Report provides, in pertinent part (p 5107), as follows: “The U. S. district courts are to have exclusive jurisdiction with respect to actions involving breach of fiduciary responsibility as well as exclusive jurisdiction over other actions to enforce or clarify benefit rights provided under title I. However, with respect to suits to enforce benefit rights under the plan or to recover benefits under the plan which do not involve application of the title I provisions, they may be brought not only in U.S. district courts but also in State courts of competent jurisdiction. All such actions in Federal or State courts are to be regarded as arising under the laws of the United States in similar fashion to those brought under section 301 of the Labor-Management Relations Act of 1947.” (Emphasis supplied.)
This intent to vest the Federal courts with exclusive jurisdiction of actions alleging a breach of fiduciary duty, or seeking a construction of section 1109 or other ERISA provisions, or requesting injunctive relief to forestall aiiy violation of a provision of title 1 of ERISA is manifested not only in history and case law but by a reading of section 1132 (subd [a], pars [2], [3]).
A resolution of this motion to dismiss rests then upon whether plaintiffs’ action may properly be characterized as one to “clarify * * * rights to benefits under the terms of the plan”. This court finds that this is not such an action. *701 Rather, plaintiffs’ action places directly into question the propriety of fiduciary conduct and calls for the construction and implementation of standards of conduct established by ERISA.
Upon the foregoing authority, the court finds that the words “under the terms of the plan” must be read restrictively. That is, actions falling within the scope of that exception include only those wherein the participant or beneficiary asks the court, as in a typical contract action, to construe or apply the terms of the plan to the facts of his/her particular issue. (See, e.g., Schulman v Jarcho, 49 NY2d 880; Mitzner v Jarcho, 58 AD2d 860; Hunacek v Union Welfare Fund Local 202, 100 Misc 2d 740.)
The instant action concerns itself not with the clarification or enforcement of benefits or rights as prescribed by the plan, but rather, with an effort by plaintiffs to forestall what they allege to be their wrongful removal from coverage by the plan. Such an action calls into question issues beyond the plan itself and removes this action from this court’s jurisdiction.
Thus, upon further reflection and review, the court finds that the analogy stated in the January 9, 1981 memorandum decision is, in fact, inaccurate. That articles V and VIII of the trust indenture contain a recitation of “Obligations and Liabilities of Trustees” does not suffice to make this action one to enforce rights “under the terms of the plan”. First, it must be noted that such fiduciary duties as are outlined in the indenture are drawn directly from ERISA. To permit the inclusion of such ERISA terms in the plan itself and thereby vest the State courts with jurisdiction would substantially undermine a carefully structured legislative scheme. Moreover, as section 1104 (subd [a], par [1], cl [D]) imposes upon the trustees a duty to act in “accordance with the documents and instruments”, an alleged violation of articles V and VIII would, in fact, call into play the standards set forth in section 1104 as enforced by section 1132 (subd [a], par [2]).
Finally, the court has considered plaintiffs’ argument with respect to subdivision (a) of section 301 of LMRA (US Code, tit 29, § 185, subd [a]) and finds it to be without merit. It is questionable as to whether, post-ERISA, in *702 deed, even pre-ERISA, subdivision (a) of section 301 vested Federal courts with jurisdiction over disputes concerning benefit plans. (See Whelan v Colgan, 602 F2d 1060; Reiherzer v Shannon, 581 F2d 1266; Rehmar v Smith, 555 F2d 1362; Beam v International Organization of Masters, Mates & Pilots, 511 F2d 975.)
However, even if it be assumed that subdivision (a) of section 301 does provide a basis for jurisdiction in the Federal courts concerning an action cognizable under ER-ISA separate and apart from the jurisdictional base provided by section 1132 (subd [e], par [1]), such basis, in this court’s opinion, has no applicability to State court jurisdiction. The court finds that plaintiffs’ reliance upon Dowd (supra) as a “source” of State court jurisdiction is misplaced. While Dowd indicates that subdivision (a) of section 301 does not “pre-empt” any State common-law or statutory basis for State jurisdiction, it is not a source of State court jurisdiction. Thus, even assuming the Federal courts do have a dual basis of jurisdiction under section 1132 (subd [e], par [1]) and subdivision (a) of section 301, under Dowd a distinct and separate common-law or statutory State basis would also have to be found for there to be a dual basis for State jurisdiction. However, while subdivision (a) of section 301 does not pre-empt any such separate State basis which may exist in the common law or statutes of the States, the “pre-emptive” provisions of ERISA (US Code, tit 29, § 1144, subd [a]) clearly precludes any such jurisdictional basis.
Upon the foregoing, the motion by defendants to dismiss the complaint is granted.
Counsel for the respective parties are directed to appear at my chambers at 9:00 a.m. sharp on December 15, 1981, to accept receipt of all exhibits submitted in evidence at the trial of this matter.