**Roger Michael AMES and Heights State Bank, Petitioners,**

v.

**R.E. AMES and R.G. Ames, Respondents.**

No. C–8024.

Supreme Court of Texas.

July 12, 1989.

Rehearing Denied Oct. 4, 1989.

David L. Peden, James P. Wallace, W. Charles Campbell, Kenneth G. Norman, Austin, J. Hoke Peacock II, Beaumont, for petitioners.

Arthur R. Almquist, Kurt M. Andreason, Beaumont, for respondents.

MAUZY, Justice.

This case involves a suit for conversion of profit-sharing funds brought by beneficiaries of an employee benefits plan against the trustee and a third-party bank. After the plan was terminated, R.E. and R.G. Ames, employee members of a profit-sharing plan at Threaded Steel Products Company (Threaded Steel), sued the sole trustee of the plan, Roger Michael Ames (Mike) and Heights State Bank, now known as NBC Bank, Houston–N.A., claiming the two wrongfully converted their benefits from the plan. After a jury trial, the trial court rendered a judgment against Mike, awarding actual and punitive damages.[1] A take-nothing judgment was rendered against Heights State Bank. The court of appeals affirmed and reformed the trial court judgment in part and awarded R.E. and R.G. an additional five percent penalty

---

1. The trial court ordered that R.E. Ames recover $242,161.40 and R.G. Ames recover $94,501 in actual damages. Further, it was ordered that both R.E. and R.G. jointly recover $10,000 in punitive damages.

because it concluded that the appeal was brought for delay and without sufficient cause. 757 S.W.2d 468. Further, the court of appeals reversed and remanded the cause of action against Heights State Bank. We modify the court of appeals' judgment to eliminate the five percent penalty and in all other respects affirm the judgment.

## THE FACTS

Threaded Steel was a family owned corporation whose officers and shareholders included three brothers, R.E., R.G., and Mike Ames. Mike was the chairman and chief executive officer at all times pertinent to this controversy. He was also the sole trustee of the company's pension and profit-sharing plan which commenced in the early 1970's. The plan had been organized pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461 (1985). The administrator of the plan was Southwestern Life Insurance Company (Southwestern Life), who is not a party to this lawsuit.

In September 1982, Mike Ames, on behalf of Threaded Steel, applied for a loan in the amount of $180,000 from Heights State Bank. The loan was declined because of the questionable financial condition of Threaded Steel. The company had suffered financial losses from 1977 through 1981.

In November 1982, steps were taken to terminate the profit-sharing plan because Threaded Steel was unable financially to contribute to the plan. Mike, as trustee, received a check in the amount of $424,-888.35 from Southwestern Life which represented all of the profit-sharing trust fund. Mike deposited these funds at Heights State Bank in the following manner:

(1) $254,646.72 in a checking account styled R.E., R.G., R.L., and R.M. Ames, with Mike as the trustee and signor.

(2) $156,500 in a certificate of deposit (CD) in the name of the profit-sharing plan.

(3) $13,741.63 in a checking account in the name of the profit-sharing plan.

Without his brothers' knowledge or consent, Mike drew a check in the amount of $254,000 against the Ames brothers' account ((1) above) payable to Interfirst Bank of Beaumont (Interfirst). The legend on the check stated "CD for R.E., R.G., R.M., R.L.[2] portion of TSP (Threaded Steel Products) Profit Share Plan." It is these funds which are the subject of this controversy. Upon termination of the plan, the remainder of the funds were disbursed to the other plan beneficiaries, all of whom were nonmembers of the Ames family.

After the transfer was made to Interfirst, $157,895.02 was transferred back by wire to Heights State Bank.[3] This money, plus an additional sum borrowed from Heights State Bank, was used to purchase a CD in the amount of $254,000. This CD was later pledged as collateral for commercial loans from Heights State Bank to Threaded Steel. Threaded Steel failed to repay the loans when they became due, consequently, the bank offset the CD against the amounts owing.

R.E. and R.G. brought suit in state district court against Mike and Heights State Bank alleging breach of fiduciary duty and conversion of their profit-sharing funds. The case was submitted to the jury under a state common law conversion theory. The jury found that Mike had converted the funds but failed to find that the CD in question contained any profit-sharing plan monies belonging to R.E. or R.G. The trial court rendered a judgment for R.E. and R.G. against Mike and rendered a take-nothing judgment against the bank. The court of appeals affirmed the judgment as to R.E. and R.G. but reversed and remand-

2. R.L. Ames, also a brother, was not a party to the lawsuit against Mike and Heights State Bank.

3. The record does not reflect what disposition was made of the excess of the funds originally transferred to Interfirst over the amount transferred back to Heights State Bank. Mike did not testify at trial, asserting his constitutional privilege against self-incrimination.

ed the take-nothing judgment against the bank to the trial court. Both Mike and the bank filed applications for writ of error before this court.

## APPLICABILITY OF ERISA

■ Mike contends that under the provisions of ERISA the state court lacks subject matter jurisdiction. He asserts that even if the state court exercised concurrent jurisdiction, the action would be preempted by ERISA.

Subject matter jurisdiction over controversies involving profit-sharing plans under ERISA is provided for in 29 U.S.C. § 1132(e)(1) (1985), which reads:

Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section.

Subsection (a)(1)(B) provides that a civil action may be brought by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B) (1985).

The facts present a novel issue: whether the provisions of ERISA continue to control after a plan is terminated and funds are distributed to some beneficiaries but the funds of two other beneficiaries are converted by the plan trustee? It is undisputed in the record that the Threaded Steel employees profit-sharing plan had been terminated prior to the deposit of R.E.'s and R.G.'s benefits into a CD at Heights State Bank. Mike distributed plan benefits to other employees, but he did not distribute R.E.'s or R.G.'s benefits to them. Instead, he placed their plan benefits in a separate account bearing his name as trustee.

The funds, which the jury found that Mike had wrongfully converted to his own use, were distributed from the plan after its termination. When he failed to distribute the benefits owed his brothers, he breached the fiduciary duty owed them under state common law and not under ERISA. The provisions of ERISA no longer governed his actions.[4]

The record shows that R.E. and R.G., as participants and beneficiaries of the plan, sought to recover benefits owed them under the plan. Their cause of action arose out of the failure or refusal of the trustee of a terminated plan to convey benefits, not the violation of fiduciary duty created by ERISA in the continuing administration of a retirement plan. Given these circumstances, the state court properly exercised jurisdiction.

Preemption under ERISA is governed by 29 U.S.C. § 1144(a) (1985) which reads:

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.

The rationale for federal preemption of state remedies and causes of action covered by ERISA is so that trustees of plans will not be subject to the threat of conflicting and inconsistent federal and state regulations. *Hoffman v. Chandler*, 431 So.2d 499 (Ala.1983); *Smith v. Crowder Jr. Co.*, 280 Pa.Super. 626, 421 A.2d 1107 (1980). Generally, ERISA preempts any state law which regulates the content or operation of the plan. Therefore, the question is whether R.E.'s and R.G.'s lawsuit "relates to"

---

4. Recently, in *Mead Corp. v. Tilley*, —— U.S. ——, 109 S.Ct. 2156, 104 L.Ed.2d 796 (1989), the United States Supreme Court applied ERISA to a case involving misconduct of a plan trustee which occurred during termination of a benefit plan. However, the instant case is distinguishable from *Tilley* because R.E. and R.G. sued for misconduct which occurred after termination of the plan was completed.

the profit-sharing plan in such a way that it is an attempt to regulate areas explicitly governed by ERISA or whether it only indirectly relates to the plan so that it does not conflict with the purpose of ERISA. *Shaw v. Westinghouse Elec. Corp.*, 276 Pa.Super. 220, 419 A.2d 175 (1980). *Lukus v. Westinghouse Elec. Corp.*, 276 Pa.Super. 232, 419 A.2d 431 (1980).

R.E. and R.G. sought to recover benefits due them under the plan after its termination. Their claims were directed at recovery of benefits under the terms of the plan and did not involve regulation of the plan. They instituted a lawsuit under Texas common law for recovery of their benefits which Mike had converted. Since the plan had terminated, we are not faced with interpreting the terms or conditions of the plan. Hence, the lawsuit did not "relate to" the employee benefit plan within the meaning of 29 U.S.C. § 1144(a) (1985).

Because we have concluded that ERISA does not apply and that if applicable the state court would have concurrent jurisdiction, we hold that the state court properly exercised jurisdiction over the action.

## THE BANK'S APPLICATION

Heights State Bank contends that the court of appeals erred in holding that the jury's negative finding on the bank's liability issue was against the great weight and preponderance of the evidence. Briefly, the facts which pertain to the bank are as follows. Mike deposited profit-sharing funds in the bank, some of which were placed into an account styled R.E., R.G., R.L., and R.M. Ames, with Mike indicated as trustee. A check in the amount of $254,000 was then drawn against this account by Mike and transferred to Interfirst. Then, $157,895.02 was transferred from the Interfirst account back to Heights State Bank. This sum, plus additional money borrowed by Threaded Steel was used to purchase a CD in the amount of $254,000. The CD was pledged as collateral to Heights State Bank for loans made to Threaded Steel. When the company failed to repay the loans, the bank offset the CD against the overdue notes.

R.E. and R.G. sued Mike as well as Heights State Bank for conversion of the profit-sharing funds. Based on the jury verdict, the trial court rendered a take-nothing judgment in favor of the bank. Specifically, the jury answered "no" to the following question:

### Question No. 8

Do you find from a preponderance of the evidence that Heights State Bank Certificate No. 28793 contains profit sharing plan monies belonging to R.G. Ames and R.E. Ames?

The court of appeals held that the jury's negative finding of this issue inquiring about the offset CD was against the great weight and preponderance of the evidence. Further, the court of appeals held that the bank's officer knew or should have known that the funds on deposit in the CD were profit-sharing trust funds. The issue regarding the bank's knowledge was unanswered as it was predicated on an affirmative finding of Question No. 8.

Heights State Bank claims that the court of appeals failed to recognize the demarcation between the function of the jury and appellate courts, and in so doing it usurped the function of the jury. The court of appeals had the task of determining whether the jury's negative answer to Question No. 8 was against the great weight and preponderance of the evidence. In its determination, the bank claims the court of appeals utilized an incorrect test.

A court of appeals may reverse and remand a case for new trial if it concludes that the jury's "failure to find" is against the great weight and preponderance of the evidence. *Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, 651 (Tex.1988). The Texas Constitution provides that the decisions of appellate courts "shall be conclusive on all questions of fact brought before them on appeal or error." Tex.Const.art. V, § 6. This constitutional provision not only grants authority to the courts of appeals but limits the judicial authority of this court. *Cropper*, 754 S.W.2d at 648. Therefore, in our review of the court of appeals' holding that the jury's

answer is against the great weight and preponderance of the evidence, we do not have jurisdiction to weigh the evidence. We do, however, have jurisdiction to determine whether or not the court of appeals applied the correct standard in reaching its decision.

In *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986) the court set out a requirement which courts of appeals must follow in reversing on factual insufficiency or great weight grounds. The court stated that the courts of appeals

> should in their opinions, detail the evidence relevant to the issue in consideration and clearly state why the jury's finding is factually insufficient or so against the great weight and preponderance of the evidence as to be manifestly unjust.... Further, those courts, in their opinions, should state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict.

*Id.* In this context, the court of appeals in the instant case went to great lengths in its attempt to follow *Pool*. It set out in detail and by actual quotes from the record the contrary evidence that it determined so greatly outweighed the evidence in support of the verdict. The court of appeals therefore performed its function in reviewing the evidence. Heights State Bank has offered another rendition of the facts in an attempt to convince us that the court of appeals' factual determination was incorrect. As previously discussed, we have no jurisdiction to make such determination.

## CONCLUSION

We modify the court of appeals' judgment to eliminate the five percent penalty and in all other respects affirm the judgment. The state court properly exercised jurisdiction over the cause of action and the court of appeals correctly applied the standard mandated by this court in *Pool*.

GONZALEZ, J., concurs and dissents, COOK, J., joins.

GONZALEZ, Justice, concurring and dissenting.

I agree with the court's disposition regarding the cause of action against Heights State Bank. However, I disagree that a trustee of a pension and profit-sharing plan organized pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461 (1985), can wiggle out from under federal jurisdiction and/or from the application of federal law by merely terminating the plan before he or she absconds with the funds. To allow this to happen, as the court has done in this case, frustrates the intent of Congress to provide stability and uniformity in this area of the law. Thus, I would reverse that portion of the court of appeals' judgment which affirms the trial court's judgment and dismiss the cause as to Roger Michael Ames (Mike).

This case involves a suit for conversion and breach of fiduciary duty brought by beneficiaries of a pension and profit-sharing plan against the trustee of the plan and a third-party bank. R.E. and R.G. Ames were employees of Threaded Steel Products Company (Threaded Steel) and were members of its profit-sharing plan. Their brother, Mike, also an employee and member of the plan, was the sole trustee of the plan. R.E. and R.G. sued Mike after the plan was dissolved, claiming that he did not perform his fiduciary duties and that he and Heights State Bank converted plan benefits.

## JURISDICTION

"ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983). As a remedial statute, ERISA provides for federal causes of action for recovery of benefits due under pension and welfare plans and for breach of fiduciary duty by plan beneficiaries. 29 U.S.C. §§ 1109, 1132(a)(1)(B) (1985). Jurisdiction over matters involving profit-sharing plans under ERISA is provided in 29 U.S.C. § 1132(e)(1) (1985) which reads:

> Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive

jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section.

Subsection (a)(1)(B) provides:

(a) Persons empowered to bring a civil action

A civil action may be brought—

(1) by a participant or beneficiary—

(B) to recover benefits due him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

It was Congress' intent to establish an inclusive statutory scheme to regulate employee benefit plans and to provide stability and uniformity in this area. *See* 29 U.S.C. §§ 1001(a), (b) (1985). To ensure this goal, ERISA has a preemption clause which provides that the Act "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan ..." *Id.* § 1144(a).[1] For purposes of this provision, "state law" includes a state's decisional law. *Light v. Blue Cross & Blue Shield of Alabama, Inc.*, 790 F.2d 1247, 1249 (5th Cir.1986); 29 U.S.C. § 1144(c)(1) (1985). *See also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). This provision, as interpreted by the United States Supreme Court, demonstrates Congress' intent "to establish pension plan regulation as exclusively a federal concern." *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981).

In the instant case, Mike claims that pursuant to ERISA the cause of action asserted against him is not within the state court system's jurisdiction and should therefore be dismissed. Alternatively, Mike contends that even if the action against him is for recovery of benefits, which would give state courts concurrent jurisdiction under 29 U.S.C. § 1132(a)(1)(B), the action is nonetheless preempted by ERISA and should therefore be dismissed since it was tried on state common law and statutory grounds.

In order for state courts to have subject matter jurisdiction to consider the action against Mike, it must be determined to be an action by plan participants seeking to recover or clarify rights to benefits "under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B) (1985). While Mike contends the action against him is for breach of fiduciary duty, R.E. and R.G. claim their suit is for recovery of benefits under the pension and profit-sharing plan which had been terminated. Hence, R.E. and R.G. claim that not only do Texas courts have jurisdiction over their suit, but that it is not preempted by ERISA as the action is only incidently or tangentially related to a benefit plan which is no longer in existence.

The case was pleaded and submitted to the jury on the theory of conversion. The instructions and special issues dealt only with conversion under state common law and the power a trustee has in transferring trust funds under state statutory law. Hence, the issue in this case at the trial court level was not whether R.E. and R.G. were contractually entitled to benefits under the terms of the plan. It is undisputed that the Ames brothers are due benefits under the terms of the plan. The claims asserted involve *conversion of plan benefits* and thus it is my view that R.E. and R.G. place at issue the propriety of certain *conduct by Mike as trustee and call for construction and application of the standards of conduct established by ERISA.*

Section 1104 of ERISA provides for certain duties owed by fiduciaries to plan beneficiaries. By allegedly having taken the benefits due the Ames brothers and having pledged them to secure loans for Threaded Steel, Mike allegedly violated express provisions of section 1104(a)(1) which provide that "a fiduciary shall discharge his duties

---

1. State laws which regulate banking, insurance, or securities are exempt from this preemption provision. 29 U.S.C. § 1144(b)(2)(A) (1985).

with respect to a plan solely in the interest of the participants and beneficiaries and ... for the exclusive purpose of ... providing benefits to participants and their beneficiaries." Undoubtedly, conversion of plan benefits by a trustee constitutes a breach of fiduciary obligations under ERISA. Therefore, the action against Mike, however labeled, is in actuality a claim for breach of fiduciary duty and should not be considered as a claim for plan benefits conferring Texas state courts with subject matter jurisdiction.

In reaching this conclusion, I would restrictively interpret the phrase "under the terms of the plan" in 29 U.S.C. § 1132(a)(1)(B) to mean state court jurisdiction is limited to suits solely involving application or construction of the terms of the plan in determining whether a participant or beneficiary is entitled to benefits *as a matter of contract law*. This interpretation is in keeping with holdings of a majority of courts which have addressed this issue. *See, e.g., Menhorn v. Firestone Tire & Rubber Co.*, 738 F.2d 1496, 1500 n. 2 (9th Cir.1984); *Central States, Southeast & Southwest Areas Health & Welfare Fund v. Old Sec. Life Ins. Co.*, 600 F.2d 671, 676 (7th Cir.1979); *Morrissey v. Curran*, 567 F.2d 546, 549 (2d Cir.1977); *Lembo v. Texaco, Inc.*, 194 Cal.App.3d 531, 538, 239 Cal. Rptr. 596, 600 (1987); *Young v. Sheet Metal Workers' Int'l Ass'n*, 112 Misc.2d 692, 698–699, 447 N.Y.S.2d 798, 803 (Sup.Ct. 1981); *Goldberg v. Caplan*, 277 Pa.Super. 47, 54, 419 A.2d 653, 657 (1980); *Duffy v. Brannen*, 148 Vt. 75, 529 A.2d 643, 651 (1987). *But see Hoffman v. Chandler*, 431 So.2d 499 (Ala.1983).

### PREEMPTION

Even if the claims asserted against Mike are within the state courts' jurisdiction, I believe that they would be preempted by the express provision of ERISA which provides that the Act preempts all state laws as far as they relate to employee benefit plans. 29 U.S.C. § 1144(a). *See generally* Bishop & Denney, *Hello ERISA, Good-bye Bad Faith: Federal Pre-emption of DTPA, Insurance Code, and Common*

*Law Bad Faith Claims*, 41 Baylor L.Rev. 267 (1989). "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw*, 463 U.S. at 96–97, 103 S.Ct. at 2899–2900. Therefore, even if the suit against Mike were considered to be a contract action to recover plan benefits, it would fall directly under ERISA's preemptive provision. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). Further, it has consistently been held that because of the broad goals of Congress in enacting ERISA, the Act preempts state common law causes of action that do not expressly concern pension plans. *See Alessi*, 451 U.S. at 523–24, 101 S.Ct. at 1906–07. Hence, ERISA's preemptive effect over state law claims "depends on the conduct to which such law is applied, not on the form or label of the law." *E–Systems, Inc. v. Taylor*, 744 S.W.2d 956, 959 (Tex.App.—Dallas 1988, writ denied) (citing *Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1504 (9th Cir.1985)). *See also Gorman v. Life Ins. Co. of North America*, 752 S.W.2d 710, 714 (Tex.App.—Houston [1st Dist.] 1988, writ requested); *Sams v. N.L. Indus., Inc.*, 735 S.W.2d 486, 489 (Tex.App.—Houston [1st Dist.] 1987, no writ); *Giles v. TI Employees Pension Plan*, 715 S.W.2d 58, 59 (Tex. App.—Dallas 1986, writ ref'd n.r.e.).

At trial, the jury affirmatively answered a special issue which asked if Mike converted the funds due R.E. and R.G. under the Threaded Steel profit-sharing plan. Thus, I believe that it is clear that although the common law cause of action of conversion does not regulate pension plans, *the conduct relied on by the Ames brothers to establish their claim pertains to proper handling of plan funds*.

### CONCLUSION

In my view, the court has erroneously placed emphasis on the fact that the plan was terminated. R.E. and R.G. claimed in their pleadings and through testimony that Mike did not perform his duties as trustee and fiduciary of the plan. This claim specifically places Mike's conduct with respect to the plan itself at issue. Therefore, appli-

**162**

cability of ERISA is unavoidable. Moreover, as a practical matter, it is unwise to hold that Mike is no longer subject to ERISA's standards simply because the plan was terminated. If this were Congress' intent, it would behoove a plan fiduciary to avoid the application and consequences of ERISA violations by terminating the plan before committing fraud or other breaches of fiduciary duty. I believe the better view dictates that ERISA governs both pre- and post-termination conduct by plan fiduciaries as it relates to profit-sharing funds. *See Mead Corp. v. Tilley*, — U.S. —, 109 S.Ct. 2156, 104 L.Ed.2d 796 (1989) (termination of the plan did not remove the action from the confines of ERISA).

For the above reasons, I dissent.

COOK, J., joins in this opinion.