TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00436-CV






Raza M. Devji, Appellant



v.



Christopher B. Keller, Mark Keller, and Kibo Development Corporation, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT


NO. 98-09746, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING







 Raza Devji, pro se, appeals following a jury trial.(1) The district court submitted
questions to the jury regarding claims of breach of contract and fraud. The district court rendered
judgment on the jury's verdict in favor of the Kellers and Kibo Development Corporation (Kibo). 
Raising seventeen points of error, Devji complains about several of the jury questions and
answers. We will affirm the district court's judgment.


Background


 We will outline the facts leading to this litigation by reviewing the reporter's record
and the parties' briefs. In December 1995, Devji, a Canadian citizen, retained Chris Keller, an
attorney licensed in Texas, to represent his Canadian corporations that were creditors of an Austin
corporation. In 1996, Devji investigated the possibility of developing residential projects on the
outskirts of Austin. His plan was to purchase large tracts of farmland, subdivide them into one-half and one acre residential lots, build roads, waterlines, and septic tanks, and then install
manufactured homes on permanent foundations. In February 1997, Devji instructed Chris Keller
to incorporate Kibo as well as a number of subsidiaries. In March, Devji purchased all issued
shares of Kibo for $1000, and was named Director, Chief Executive Officer, and Treasurer. 
Devji was to be solely responsible for the day-to-day management of the corporation. Chris Keller
was appointed Director, President and Secretary. Soon after incorporating Kibo and several
subsidiaries, Taylor Estates, Inc., a Kibo subsidiary, contracted to purchase 320 acres near Taylor
with staggered closings. In September 1997, by a letter agreement, a friend of Devji's, Lina
Thomas, transferred to Kibo free and clear particularly described property in Carlsbad, California,
(California property) in exchange for an interest in Kibo's profits. 

 In January 1998, Devji and Chris Keller executed a shareholder agreement (January
agreement). They agreed that Keller would provide free legal consultations and would apply for
a secured loan of $240,000. The proceeds of the loan would be used exclusively for the benefit
of Kibo and the subsidiaries. Devji and Kibo agreed to indemnify and hold Chris Keller harmless
from and against any claims or expenses in connection with the loan. Under the agreement, as
security for the loan, Kibo would transfer to Keller free and clear the California property. The
January agreement's conditions regarding the California property were that, from the time of the
loan until repayment, all of the net income from the California property would be used to repay
the loan. Once the loan was repaid, Keller would convey the property back to Kibo, or to any
entity that Kibo directed. Further, the January agreement provided that in the event of a default
in repayment of the loan, or if Chris Keller reasonably concluded that default was likely, Chris
Keller could cause the property to be sold in a reasonable manner and the proceeds applied first
to the expenses of the sale and second to Keller's expenses related to the sale. Additionally, in
order to secure Keller against default in repaying the loan, Kibo granted Chris Keller a lien against
various properties in Texas. Following the terms of the January agreement, Chris Keller obtained
a secured loan in his name for $214,500. The proceeds were deposited in a trust account and used
to pay Kibo's expenses.

 Taylor Estates, Inc., closed on approximately 63 acres out of the 320 Taylor
property acres it had contracted to purchase. Other subsidiaries had also paid earnest money on
125 acres in Niederwald, and approximately 77 acres near Creedmore. Additionally, Kibo
contracted with Professional Design Group to obtain plat approvals for the proposed residential
communities.

 In February and March 1998, Kibo closed on the 125 acres near Niederwald and
Taylor Estates received plat approval for six one-acre lots out of the Taylor property. The
subsidiary, Taylor Estates, entered into a contract to purchase 58 acres near Hutto which closed
in April. Elgin Estates, Inc., another subsidiary of Kibo, entered into a contract to purchase 175
acres near Elgin.

 In April 1998, Devji, Thomas, Chris Keller and Mark Keller executed a second
shareholder's agreement (April agreement). This agreement "ratified and confirmed" the January
Agreement. The Kellers were to each invest $50,000 in Kibo and to personally guarantee any debt
Kibo incurred as determined necessary by Kibo's board of directors. Additionally, Mark Keller
was to obtain financing for eighty percent of the $100,000 purchase price of the Creedmore
property.

 After executing the April agreement, the shareholders were shown an 80-acre parcel
of land. All agreed that Niederwald Estates, Inc., a Kibo subsidiary, would enter a contract to
purchase the land with a closing date of September 1, 1998. After executing the contract, the
group formed Huber Estates, Inc., with Devji and Chris Keller as directors of that subsidiary.

 The Kellers each contributed $50,000. Despite their efforts, the Kellers were
unable to obtain financing for the Creedmore property. Additionally, Kibo was unable to sell any
property. Kibo's sales manager suffered a heart attack shortly after he was hired in March 1998
and never sold any property. At the time of the April agreement, Kibo had six subdivided lots
supplied with water in Taylor Estates and ten subdivided lots in the Hutto property. There were
two pieces of property under contract, the Huber property and the Creedmore property, both with
closing dates of September 1, 1998.

 Not long after executing the April agreement, Kibo had insufficient funds to
develop its properties and operate day-to-day. The Kellers asked Devji and Thomas to contribute
funds toward the cost of the Huber property, but they refused. In May, Devji suggested canceling
the Elgin contract during the cancellation period in order to get the $15,000 earnest money back. 
Mark Keller suggested that if he could not obtain financing for both the Creedmore and the Huber
properties it was better to purchase the Huber property and let the Creedmore property go. Devji
agreed that if they could not get financing for the Creedmore property it would have to be sold. 

 By July, however, Devji was angry with Chris Keller for refusing to contribute
additional funds for the Huber property, accused Chris Keller of breaching the parties' agreement,
and threatened to sue him. The Kellers suggested that they sell the land under contract to generate
cash. Devji refused, threatened to sue the Kellers if they attempted to sell the land, told them that
he expected them to close both the Creedmore and Elgin contracts to fulfill their obligations under
the April agreement, and refused to contribute any funds for operating expenses.

 By mid-July, Devji had discussed with Jody Hagemann, who at the time was Kibo's
lawyer, the possibility that she or someone else could enter a joint venture with Devji and acquire
the Kibo property for development without Kibo's or the Kellers' participation. Devji told Mark
Keller that he had contacts with other investors who were interested in buying the Hutto property,
or the Huber contract, or both. Devji also told Mark Keller that he wanted to change the April
agreement to give himself and Thomas a larger proportionate share of the Huber contract.

 On July 17 at a shareholders meeting, the parties discussed the possibility that Mark
Keller would be unable to get financing for both the Creedmore and Huber properties. The
Kellers and Thomas agreed that the Huber property should be purchased. Devji wanted a right
to assign the Creedmore property to Hagemann at cost and to participate in the development of the
property excluding the Kellers. The Kellers did not agree to sell the Creedmore property.

 On July 23, Devji notified the Kellers that they were responsible for financing the
Creedmore and Elgin properties and for paying in an additional $50,000 by the end of that week
and that their failure to do so would be a breach of contract entitling Devji to replace them with
other investors as shareholders in Kibo. On July 24, Chris Keller sent Devji a letter proposing
to close the Creedmore and Huber contracts and stating that the Kellers could obtain financing for
both contracts. The letter asked Devji to try to sell the mobile home that the parties owned and
to indicate his agreement by signing the letter. Devji did not respond. On July 31, the Kellers
decided not to pay, and did not pay, the earnest money installment that was due on the Huber
contract. Devji, however, paid the installment before its due date on August 8. During August,
Chris Keller's attorney negotiated a settlement with Devji. In a letter of August 21, Devji
responded and agreed to all of the demands but that as a condition of settlement, Chris Keller must
deliver an assignment of the Huber contract to Hagemann. Chris Keller delivered the assignment
and draft settlement to Hagemann. Rather than execute the settlement agreement, Devji filed the
underlying lawsuit against Chris and Mark Keller.

 The Kellers negotiated a closing on the Creedmore property. Devji, Hagemann,
and their group closed the purchase of the Huber property through their separate entity. The
California property had not generated enough income to cover the mortgage payments. Kibo, with
contributions from the Kellers, covered the negative cash flow. By fall of 1998, the California
property was in default and Chris Keller wanted to sell it to avoid foreclosure. Devji attempted
to prevent the sale, alleging that Chris did not have authority to sell the property. After obtaining
a restraining order against Devji, Chris sold the California property to avoid foreclosure.

 After several partial summary judgments and nonsuits, the case finally proceeded
to a jury trial. The case went to the jury on thirty-five questions related to breach of contract and
fraud claims. The district court rendered judgment in accordance with the jury's verdict against
Devji and in favor of the Kellers.


Discussion


 In his brief, Devji arranged his seventeen points of error to follow the jury charge;
we will address the points in that order.

 In point of error one, Devji complains that the district court erred in submitting the
first jury question which asked, "Did Devji fail to comply with the April 1998 Shareholder
Agreement?" The following instruction accompanied the question,


You are instructed that the April 1998 Shareholder Agreement includes all terms
of the January 1998 Shareholder Agreement not modified by the April 1998
Shareholder Agreement.




 Devji argues that the district court erred in asking this question because
substantively it was a question about whether Devji breached a contract, which is a question of law
to be decided by the court not the jury. The Kellers respond that Devji did not object to the
submission of this question and has thereby waived his complaint.

 We agree with the Kellers that Devji failed to object to this question at trial and has,
therefore, waived his complaint on appeal. See Tex. R. App. P. 33.1(a). Even if Devji did not
waive this appellate complaint, we nevertheless conclude that the district court did not err in
submitting this question to the jury.

 Whether a party has breached a contract is a question of law and not a question of
fact. See Lafarge Corp. v. Wolff, Inc., 977 S.W.2d 181, 186 (Tex. App.--Austin 1998, pet.
denied). If a dispute exists about whether a party has failed to perform under a contract, the
district court submits the disputed question to the jury. Id. If the jury determines that the party
failed to comply with the agreement's terms then the court decides whether the legal effect of the
failure was a breach of contract. Id. Based on the evidence presented, a dispute existed about
whether Devji failed to perform under the April agreement. As a result, the district court did not
err in submitting the question to the jury to resolve the disputed fact question. Point one is
overruled.

 In point of error two, Devji contends, without citing any authority, that the district
court erred in submitting question one because the district court determined during the proceeding
that Chris Keller did not comply with the January agreement. Devji argues that consequently
Chris Keller could not claim any breach of the agreement by Devji. We find no authority for
Devji's position. Point two is overruled.

 By points three and four, Devji contends that the evidence is legally and factually
insufficient to support the jury's answer to question one that Devji did not comply with either the
January or April agreements.

 In considering a legal sufficiency point, we consider only the evidence or inferences
from the evidence favorable to the decision of the trier of fact and disregard all evidence and
inferences to the contrary. Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965). If the appellant
did not have the burden of proof on the challenged finding, the appellant must show that no
evidence supports the adverse finding; the challenge fails if more than a scintilla of evidence
supports the finding. Stafford v. Stafford, 726 S.W.2d 14, 16 (Tex. 1987); In re King's Estate,
244 S.W.2d 660, 661 (Tex. 1951). The appellant must go one step further when attacking an
adverse failure to find on which it had the burden of proof; that appellant must also show that the
evidence conclusively established all vital facts in support of the issue. Sterner v. Marathon Oil
Co., 767 S.W.2d 686, 690 (Tex. 1989); Holley v. Watts, 629 S.W.2d 694, 696 (Tex. 1982).

 When reviewing a factual sufficiency challenge, we must assess all the evidence and
may not substitute our judgment for that of the trier of fact. When the challenge is to a finding
on which the prevailing party had the burden of proof, we may reverse the judgment only if the
challenged finding shocks the conscience or clearly shows bias, or if the favorable evidence is so
weak as to make the judgment clearly wrong and manifestly unjust. Pool v. Ford Motor Co., 715
S.W.2d 629, 635 (Tex. 1986); Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). If the challenge
is to an adverse finding (or failure to find) on which the appellant had the burden of proof, we may
reverse only if the finding is so contrary to the overwhelming weight and preponderance of the
evidence as to be clearly wrong and manifestly unjust. Ames v. Ames, 776 S.W.2d 154, 158 (Tex.
1989); Cropper v. Caterpillar Tractor Co., 754 S.W.2d 646, 651 (Tex. 1988).

 Devji was Kibo's chief operating officer and was solely responsible for the
company's day-to-day operation. In April 1998, Kibo or its subsidiaries owned sixteen one-acre
lots supplied with water and ready for sale. None of these lots were sold. In July 1998, Devji
became angry with Chris Keller and the Kibo sales manager, and he abandoned all efforts to sell
the properties. Instead, from that time on Devji devoted his efforts to developing the Huber
property and did not actively participate in attempting to sell the already developed lots. Despite
the inability of Kibo to secure financing, Devji repeatedly opposed the Kellers' efforts to sell
undeveloped land to generate cash. Devji also opposed Chris Keller's efforts to sell the California
property to avoid an inevitable foreclosure. Devji insisted that the Kellers personally finance
Kibo's operations and threatened them with lawsuits if they did not finance the purchase of the
Creedmore property. While Devji was demanding that Chris Keller pay $5,000 in expenses for
the Huber project and threatened to sue if Chris did not pay the $5,000, he was conspiring to
develop properties initially acquired by Kibo and to directly compete with Kibo. We hold that
legally and factually sufficient evidence exists to support the jury's answer to question one. Points
of error three and four are overruled.

 In point of error five, Devji complains about jury question two, which was
presented as follows:


Did Devji commit fraud against and proximately cause damages to Chris Keller
and/or Mark Keller?



Accompanying the question were instructions regarding two bases for fraud--misrepresentation
and nondisclosure. See Santanna Natural Gas Corp. v. Hamon Operating Co., 954 S.W.2d 885,
890 (Tex. App.--Austin 1997, pet. denied) (fraud may consist of both active misrepresentation and
passive silence). The jury answered "yes" regarding both Chris and Mark Keller.

 Specifically, Devji argues the following,


prior to submitting this question to the jury, the trial judge should have made a
determination on the basic legal issue: Did the shareholder agreements create
obligations on Devji independently of contract which gave rise to tortious liability
of fraud?



Without any argument, Devji simply cites Hogett v. Brown, 971 S.W.2d 472 (Tex. App.--Houston
[14th Dist.] 1997, pet. denied), and Bank of El Paso v. T. O. Stanley Boot Co., 809 S.W.2d 279
(Tex. App.--El Paso 1991), aff'd in part & rev'd in part, 847 S.W.2d 218 (Tex. 1992).

 We have reviewed these cases and it remains unclear to us what Devji's contention
is in this point of error. Devji has presented no argument for his contention. See Tex. R. App.
38.1(h). Additionally, Devji has not performed his duty to show that the record supports his
contention and to point to supporting places in the record. Id. Because Devji's briefing is
deficient, point of error five is overruled.

 By points of error six and seven, Devji contends the evidence is legally and
factually insufficient to support the jury's answer to question two, in which the jury found that
Devji committed fraud against and proximately caused damages to both Chris and Mark Keller. 

 The evidence supports the jury's answer to question two. Under the shareholder's
agreement, Devji undertook management of the day-to-day operations of Kibo. At the same time,
he failed to disclose to the Kellers his involvement in competing projects. At the time of the April
7, 1998 shareholder agreement, Devji was negotiating deals with Jody Hagemann and other
investors to do competing deals with Kibo. Devji made it clear to the Kellers that he believed that
he was entitled to engage in competing investment projects. Devji opposed the Kellers' efforts to
sell any land that was less than fully developed regardless of Kibo's dire financial situation. While
Devji threatened to sue the Kellers if they did not put up funds for two projects, he was negotiating
a deal to transfer ownership of the Huber property from Kibo to a new entity. From these actions,
along with Devji's opposition to Chris Keller's selling the California property when foreclosure
was imminent, the jury could have concluded that Devji never intended to perform his obligations
under the shareholder agreements. Points six and seven are overruled.

 In point of error eight, Devji makes two claims: first, conditioning the damage
questions four and five on an affirmative answer to questions one, two or three was improper
because it misled the jury; and second, the damages awarded allowed Chris and Mark Keller a
double recovery. Again, Devji cites no authority for his argument.

 Regarding Devji's first claim, if Devji believed that questions four and five were
improperly conditioned, it was necessary for him to object to the submission of the questions.
Without a proper objection, Devji has not preserved this complaint for appellate review. See Tex.
R. App. P. 33.1(a).

 Regarding Devji's second argument, that awarding damages to the Kellers allowed
them a double recovery, appellant was required to object to the jury instruction which provided
that in awarding damages the jury could consider "funds invested in Kibo or expended on Kibo's
behalf that were a natural, probable and foreseeable consequence of Appellant's conduct." If Devji
thought that this would allow the Kellers a double recovery, he was required to object to the
instruction. See Cameron v. Terrell & Garrett, Inc., 618 S.W.2d 535, 538 n.4 (Tex. 1981). 
Because Devji failed to object, he has not preserved this complaint for appellate review. Point of
error eight is overruled.

 By point of error nine, Devji complains about jury questions eight and nine. 
Question eight asked, "Do you find by clear and convincing evidence that the harm to Chris Keller
resulted from fraud or malice?" Question nine asked the same question regarding Mark Keller. 
The jury answered both questions "yes." Devji contends that there was a complete absence of
evidence of malice by Devji. Because the judgment did not award exemplary damages, any error
regarding questions eight and nine as they relate to malice is harmless. Point of error nine is
overruled.

 By point of error ten, Devji complains about jury questions twelve, thirteen, and
fourteen. These questions asked whether Devji violated his fiduciary duty and proximately caused
damages to Kibo. Devji contends there is a complete absence of evidence that Kibo suffered any
damage as a result Devji's acts. We hold that sufficient evidence supports the jury's answer that
Devji harmed Kibo by pursuing his own interests at Kibo's expense.

 Devji also contends that no evidence supports the sum of damages awarded to Kibo,
that the amount "appears to [have been] pulled out of a hat." In response to question thirteen, the
jury determined that Kibo suffered damages caused by Devji in the sum of $39,038; the judgment
awarded this sum to Kibo. At trial, Devji testified that the Hagemann group had sold one of the
Huber lots that had been developed by Kibo and that the profit from the sale of the lot was
$24,800. Additionally, the evidence presented showed that Kibo spent $14,238 in acquiring and
developing the Huber tract. We hold that this evidence supports the jury's finding and the award
of damages in the sum of $39,038 to Kibo, as this sum represents the amount Kibo was out due
to Devji's actions. Point of error ten is overruled.

 By point of error eleven and without citing any authority, Devji contends that the
evidence was legally and factually insufficient to support the jury's answer to question sixteen that
Devji was unjustly enriched and the jury's answer to question seventeen that Chris Keller was
entitled to recover from Devji $1,120 for his out-of-pocket expenses related to the loan secured
by the California property. Devji testified that he received money from Kibo as compensation for
overseeing the day-to-day operation of Kibo. As we have already reviewed the evidence, we hold
that sufficient evidence exists to support the jury's finding that Devji was unjustly enriched when
he was paid by Kibo while he was actually competing with Kibo in the Hagemann group.
Additionally, Chris Keller gave a full accounting of all of his expenses regarding the loan secured
by the California property. Sufficient evidence supports the jury's finding that he was entitled to
recover $1,120 for his out-of-pocket expenses related to the loan secured by the California
property. Point of error eleven is overruled.

 By point of error thirteen, and without citing any authority, Devji contends the
evidence is insufficient to support the jury's answer to question twelve, in which it determined that
Devji engaged in oppressive conduct and Chris Keller did not. "Oppressive conduct" was defined
as including burdensome, harsh, or wrongful conduct; a lack of probity and fair dealing in the
company's affairs to the prejudice of some members; or a visible departure from the standards of
fair dealing and a violation of fair play on which each shareholder is entitled to rely. Once again
the evidence detailed previously supports the jury's finding that Devji engaged in oppressive
conduct as defined in the jury charge. The evidence does not show that Chris Keller engaged in
oppressive conduct. Point of error thirteen is overruled.

 By point of error fourteen, and without citing any authority, Devji contends that
insufficient evidence supports the jury's answer to question twenty-one that Devji paid or advanced
to Kibo $0. The party bearing the burden of proof at trial who challenges an adverse finding
based on legal sufficiency must demonstrate on appeal that the evidence conclusively establishes
all facts necessary to support the issue. See AT&T Corp. v. Rylander, 2 S.W.3d 546, 552 (Tex.
App.--Austin 1999, no pet.). 

 The only evidence that Devji loaned any amount to Kibo was his own testimony that
he loaned funds in the amount of $158,000 to Kibo before the April 7, 1998 shareholder
agreement was executed. Chris Keller testified that he was unaware of the alleged loan until Devji
filed suit claiming the loan amount as damages. There was no other evidence supporting Devji's
claim that he loaned Kibo $158,000. Additionally, Devji contends that it was uncontroverted that
he paid $1000 for issuance of all of the Kibo stock. The jury was entitled to disbelieve Devji's
testimony. Point of error fourteen is overruled.

 By point of error fifteen, and without citing any authority, Devji complains about
the jury's answer to question twenty-five. The jury answered "no" to the question asking whether
Chris Keller failed to comply with the April 1998 shareholder agreement. The court instructed
the jury that the April 1998 agreement included all terms of the January 1998 agreement that were
not modified by the April 1998 agreement.

 Once again, Devji complains about an issue on which he had the burden of proof. 
Consequently, he must show on appeal that the evidence conclusively shows that Chris Keller
failed to comply with the April 1998 shareholder agreement. Devji argues in his brief that Chris
Keller failed to comply with the April 1998 shareholder agreement because he did not apply his
$50,000 towards Kibo's bonafide operating expenses, he did not close the Elgin contract, and he
did not provide any personal guarantees for Kibo to raise funds to meet its commitments of which
Chris Keller was fully aware before executing the April 1998 shareholder agreement.

 As the jury determined, Chris and Mark Keller together contributed $53,300 more
than they were required to contribute to Kibo. There was evidence that all funds entrusted to
Chris Keller were applied to Kibo's bona fide operating expenses. Under the April shareholder
agreement, Chris Keller was not obligated to "close" the Elgin contract. Additionally, the
evidence showed that both Chris and Mark made several attempts to obtain financing but were
unsuccessful. There was also evidence that even with Chris Keller's personal guarantee, Kibo's
creditworthiness was such that it could not have obtained financing for operations. The jury was
entitled to find that Chris Keller did not breach the April shareholder agreement. Point of error
fifteen is overruled.

 By point of error sixteen, and without citing any authority, Devji complains of the
jury's answers to questions twenty-seven and twenty-eight. In its answer to question twenty-seven, the jury determined that Kibo failed to comply with the April 1998 shareholder agreement. 
In its answer to question twenty-eight, however, the jury determined that Kibo was excused from
compliance with the April 1998 agreement. Devji first contends that once the jury determined that
Kibo breached the April 1998 shareholder agreement then Kibo could not use any of the
circumstances listed in question twenty-eight to absolve itself of liability to Devji. Devji failed
to object to jury question twenty-eight and consequently has waived this complaint on appeal.

 Devji next complains that insufficient evidence supports a finding that Devji
committed any of the five circumstances listed in question twenty-eight that would excuse Kibo's
noncompliance with the April 1998 shareholder agreement.(2) We disagree with Devji's contention
and hold that sufficient evidence supports at least one of the five circumstances that would excuse
Kibo's compliance with the April 1998 shareholder agreement. Point of error sixteen is overruled. 

 In point of error seventeen, Devji contends that the settlement agreement between
Kibo, the Kellers, and Lina Thomas was unlawful because Kibo was insolvent at the time it was
approved. There was no finding that Kibo was insolvent at the time of the settlement. Point of
error seventeen is overruled.

 After addressing all of the dispositive points of error, we hold that the district court
did not err in its judgment. The district court's judgment is affirmed.



 

 J. Woodfin Jones, Justice

Before Justices Jones, Yeakel and Patterson

Affirmed

Filed: December 21, 2000

Do Not Publish


1.   As a preliminary matter, we note that Devji also acted pro se at trial. The brief he tendered
does not comply with the briefing rules as several points of error contain no citations to authority
nor record references. Tex. R. App. P. 38.1(h). Pro se representation does not excuse an
appellant from complying with applicable rules of procedure: "Neither is it [the right of self-representation] a license not to comply with the relevant rules of procedural and substantive law." 
Faretta v. California, 422 U.S. 806, 834 n.46 (1975). As stated by the Texas Supreme Court:


There cannot be two sets of procedural rules, one for litigants with counsel and the
other for litigants representing themselves. Litigants who represent themselves must
comply with the applicable procedural rules, or else they would be given an unfair
advantage over litigants represented by counsel.


Mansfield State Bank v. Cohen, 573 S.W.2d 181, 184-85 (Tex. 1978); Chandler v. Chandler, 991
S.W.2d 367, 378-79 (Tex. App.--El Paso 1999, pet. denied), cert. denied, 120 S. Ct. 1557 (April
3, 2000). 
2.   Question twenty-eight asked, 


Was Kibo's failure to comply, if any, excused? 


You are instructed that Kibo's failure to comply, if any is excused under any of the
following circumstances:


1. Devji's previous failure to comply with a material obligation of the agreement;
delay in compliance beyond a reasonable period is a failure to comply; or 


2. Prior repudiation of the agreement; a party repudiates an agreement when he or
she indicates, by his or her words or actions, that he or she is not going to
perform his or her obligations under the agreement in the future, showing a fixed
intention to abandon, renounce, and refuse to perform the agreement; or


3. If Devji, by words or conduct, made a false representation or concealment of
material facts, with knowledge of the facts or with knowledge or information that
would lead a reasonable person to discover the facts, and with the intention that
Kibo would rely on the false representation or concealment in acting or deciding
not to act; and Kibo did not know and had no means of knowing the real facts and
relied to their detriment on the false representation or concealment of material
facts; or 


4. If Devji waived compliance by Kibo. "Waiver" means an intentional surrender of
a known right or intentional conduct inconsistent with claiming the right; or


5. If there was good cause for discharging Devji. "Good cause" means that the
employee failed to perform those duties in the scope of his employment as a
person of ordinary prudence would have done under the same or similar
circumstances, or that the employee committed acts in the scope of his
employment which a person of ordinary prudence would not have done under the
same or similar circumstances.


ched the April 1998 shareholder agreement then Kibo could not use any of the
circumstances listed in question twenty-eight to absolve itself of liability t