COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 
2-02-212-CV
 
ED SKOOG AND PAULA SKOOG                                           APPELLANTS 
 
V.
 
MICHELE MARIE LONG CODY, KAREN                                      APPELLEES 
SUE CODY MALUF, JJONDE DEL CODY,
ANN DENISE CODY BOURAS, AND
ELIZABETH LOUISE CODY SCHMIDT
 
AND
 
MICHELE MARIE LONG CODY                                          APPELLANT 
 
V.
 
ED SKOOG AND PAULA SKOOG                                               APPELLEES 
 
------------
 
FROM THE 
96TH DISTRICT COURT OF TARRANT COUNTY 
 
------------
 
OPINION
 
------------
        In this property rights dispute, Appellants Ed and Paula Skoog appeal the 
trial court’s order denying their motion for new trial, contending that the jury’s 
verdict was factually and legally insufficient. We affirm. 
Factual and Procedural Background
        Paula is the daughter of Appellee Michele Cody and the older sister to all 
other Appellees, Karen Maluf, Jjonde Cody, Ann Bouras, and Elizabeth Schmidt. 
Andrew Cody, Michele Cody’s husband and Paula Skoog’s father, died intestate 
in 1988. Mrs. Cody filed an Affidavit of Heirship on December 27, 1988, 
listing two houses, a travel trailer, and two vehicles in the decedent’s 
community property estate. One of the houses, located in Hurst, Texas, was 
the Cody’s residence since 1967. Mrs. Cody continued to live in the home 
alone after her husband’s death, but in 1990 her health began failing due to 
arthritis and what she believed was the beginning of Parkinson’s disease. In 
light of Mrs. Cody’s medical problems, Appellants and Mrs. Cody agreed to 
combine households. Appellants moved into Mrs. Cody’s home along with their 
two sons in December of 1991 and eventually sold their home in November of 
1992. On December 17, 1991, Mrs. Cody signed a warranty deed conveying 
her home to Appellants wherein she retained a life estate. 
        Kevin Kuenzli, a lawyer certified in tax law, estate planning, and probate 
law, prepared the warranty deed that conveyed the property to Appellants. 
Kuenzli testified that he was not aware of any agreement that gave Appellants 
the right to live in the house for the rest of Mrs. Cody’s life. He further testified 
that such an agreement would be inconsistent with the deed because the right 
to live in the house was reserved and retained by Mrs. Cody. The warranty 
deed states that Mrs. Cody “shall have the full possession, use and benefit of 
said property, as well as the rents, revenues and profits thereof, for and during 
[her] natural life.” 
        All parties concede that there was an agreement between Appellants and 
Mrs. Cody regarding their living arrangements and the warranty deed. The 
particulars of the agreement, however, are in dispute. Appellants contend that 
it was agreed and understood by Mrs. Cody that as long as Appellants were 
willing to care for her, they could live in the house free of rent and would inherit 
the house upon Mrs. Cody’s death. Appellants additionally claim that the 
agreement prohibited Mrs. Cody from evicting Appellants and vice versa. 
Appellees claim the agreement was that in exchange for the remainder interest 
in the property, Appellants agreed to take care of Mrs. Cody for the rest of her 
life. Appellees argue that Mrs. Cody was not prohibited from evicting 
Appellants because the agreement was that Appellants could live in the home 
only as long as they actually took care of Mrs. Cody. If Appellants ceased to 
take care of Mrs. Cody, Appellees claim that the agreement was for Appellants 
to leave the house and return the warranty deed to Mrs. Cody. Appellees 
concede that they do not contest Appellant’s remainder interest in the property 
in the appeal. 
        Appellants and Mrs. Cody lived harmoniously together in the home for the 
first four years. During this time, Appellants and Mrs. Cody made significant 
improvements to the home. Appellants claim that they spent approximately 
$49,000 of their own money on the improvements and acknowledge that Mrs. 
Cody also contributed to the remodeling of the home. 
        Appellants contend that beginning in late 1995, Mrs. Cody began 
showing signs of early dementia and Paula’s siblings began making accusations 
that Appellants were stealing money from Mrs. Cody, causing tension between 
Appellants and Mrs. Cody. Appellees contend that Mrs. Cody became 
increasingly uncomfortable living in the home and began taking extended 
vacations or staying overnight at her children’s homes to avoid contact with 
Appellants. Appellees claim that: there was frequent yelling and arguing 
between Appellants; Paula was trying to have Mrs. Cody declared incompetent; 
Appellants brought in a large dog that scared Mrs. Cody; and Appellants owned 
exotic lizards that required them to keep live roaches and crickets in the home. 
Mrs. Cody testified at another trial that she was scared for her life after Paula 
twisted her arm and slapped Maluf during an argument. 
        The relationship between Appellants and all of the Appellees continued 
to deteriorate, and in June 1997, Paula wrote her mother and siblings a letter 
refusing to take further care of Mrs. Cody. The letter, in pertinent part, stated: 
If I am aware that mother is in need of emergency care, I will
be responsible for getting her emergency care. Immediately, I shall
notify whichever one of you I can contact, and someone else will
take over the arrangements for further care. I will not be
responsible for obtaining medications, making medical or dental
appointments or transportation. I will not be responsible for giving
nursing care or making arrangements for it nor for providing her
personal care in any capacity.

In response, Mrs. Cody moved her furnishings out of the house and moved in
with her son Jjonde in July of 1997. Shortly thereafter, Appellants changed
the locks to the house and placed Mrs. Cody’s remaining belongings in garbage
sacks and put them on the front porch.
        Mrs. Cody made attempts in the Justice Courts of Tarrant County to have 
Appellants evicted. These cases were dismissed for lack of jurisdiction. On 
Monday, April 2, 1998, a Tarrant County Court at Law held a bench trial on 
Mrs. Cody’s forcible detainer claim and granted her a writ of possession 
allowing her to evict the Appellants from the home. Appellants moved out of 
the home that weekend. 
        Appellants filed suit against Appellees for various causes of action 
including breach of contract, wrongful eviction, breach of warranty, tortious 
interference with contract, fraud, cloud on title, and mutual mistake. Appellees 
denied Appellants’ causes of action and filed various affirmative defenses to 
Appellants’ claims, including res judicata, collateral estoppel, estoppel, quasi-estoppel, statute of frauds, statute of limitations, parol evidence rule, and 
anticipatory repudiation. Mrs. Cody asserted counterclaims against Appellants 
for injury to real property, rent, and conversion of certain personal property. 
Appellees Maluf, Jjonde Cody, Bouras, and Schmidt asserted a counterclaim 
seeking a declaratory judgment that no cloud on title exists with respect to the 
property and improvements. After an eight-day trial, issues for only two causes 
of action asserted by Appellants were submitted for consideration by the jury 
—breach of contract against Mrs. Cody and tortious interference by the 
siblings. All of Mrs. Cody’s counterclaims were submitted for consideration by 
the jury. 
        Jury Question Number 1 asked the jury to determine if there was an oral 
agreement between Mrs. Cody and Appellants whereby Appellants could not 
be evicted from Mrs. Cody’s home if they agreed to care for Mrs. Cody. The 
jury answered “no” to this question. Because all subsequent questions 
regarding Appellants’ claims were conditioned on a finding of the existence of 
that specific agreement, Appellants were denied relief for all of their claims. 
The jury also answered the issues submitted by Mrs. Cody on her counterclaims 
in the negative. The trial court rendered judgment on the verdict on March 21, 
2002. That judgment provided that all parties take nothing for their claims and 
that each party bear their own costs of court. The court did not grant the 
declaratory judgment requested by Appellees. 
        In Appellants’ sole issue, they argue that the jury’s answer to Question 
Number 1 was both factually and legally insufficient. Mrs. Cody filed cross-issues claiming legal insufficiency to support the jury’s findings in favor of 
Appellants regarding Mrs. Cody’s claims and the denial of attorneys’ fees. Mrs. 
Cody asks us to consider these cross-issues only in the event that we reverse 
this case based upon the issue and argument raised by Appellants. Otherwise, 
Mrs. Cody requests that we affirm the trial court’s final judgment. 
Discussion
        Appellants’ sole issue on appeal is based upon a challenge of the legal 
and factual sufficiency of the evidence. 
Legal Sufficiency
        Appellants assert that there is no evidence to support the jury’s answer 
to Question Number 1. When the party having the burden of proof on a fact 
question appeals from an adverse answer, the issue or point challenging the 
legal sufficiency of the evidence should be that the matter was established “as 
a matter of law.” Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983). 
Nonetheless, the Texas Supreme Court’s practice is to liberally construe the
issues or points contained in appellate briefs. Pool v. Ford Motor Co., 715
S.W.2d 629, 633 (Tex. 1986) (op. on reh'g). Thus, if a party with the burden 
of proof incorrectly phrases the issue or point and contends there was “no 
evidence” to support the jury's answer, the party has still invoked this court's 
appellate jurisdiction to consider the contention that the opposite of the answer 
was established as a matter of law. Id.; Croucher, 660 S.W.2d at 58. 
        If an appellant is attacking the legal sufficiency of an adverse answer to 
an issue on which he had the burden of proof, the appellant must overcome 
two hurdles. Victoria Bank & Trust Co. v. Brady, 811 S.W.2d 931, 940 (Tex. 
1991). First, the record must be examined for evidence that supports the 
finding, while ignoring all evidence to the contrary. Second, if there is no 
evidence to support the finding, then the entire record must be examined to see 
if the contrary proposition is established as a matter of law. Id.; Sterner v.
Marathon Oil Co., 767 S.W.2d 686, 690 (Tex. 1989).
        Appellants claimed in the lower court that their agreement with Mrs. Cody 
gave them an equal right of possession to the property and challenged the 
validity of the warranty deed that gave Mrs. Cody the sole right to possess or 
use the property during her lifetime. Appellants, as plaintiffs in this case, bore 
the burden of proof at trial. Thus, Appellants’ challenge to the legal sufficiency 
of the jury’s answer to Question Number 1 must begin with an examination of 
the evidence that supports the jury’s findings, while ignoring the controverting 
evidence. Marathon Oil, 767 S.W.2d at 690. 
        The reservation by Mrs. Cody of a life estate in the warranty deed is 
strong evidence in support of the jury’s finding that there was no oral 
agreement between Appellants and Mrs. Cody whereby Appellants could not 
be evicted from the home. The warranty deed states that Mrs. Cody “shall 
have the full possession, use and benefit of said property, as well as the rents, 
revenues and profits thereof, for and during [her] natural life.” Standing alone, 
the deed’s reservation of Mrs. Cody’s right to full possession, use, and benefit 
of the property defeats any argument that Appellants could not be evicted from 
the home. 
        Although Mrs. Cody was incompetent to testify as a witness at trial, 
portions of her previous testimony at the forcible detainer trial were read into 
the record. Mrs. Cody testified that she had an agreement with Appellants that 
if they took care of her for the rest of her life, they would receive the house 
after she died. When asked what was to happen if Appellants stopped taking 
care of her, Mrs. Cody replied that they would give her back the warranty deed 
and leave the house. The jury heard evidence regarding Mrs. Cody’s attempts 
to evict Appellants and the county court’s writ of possession granting Mrs. 
Cody full possession of the property. This is further evidence that the parties 
did not have an agreement that prevented them from evicting one another from 
the home. 
        The testimony of the remaining Appellees also supports the jury’s finding 
that there was no agreement whereby Appellants could not be evicted from the 
home. Bouras, Schmidt, Cody, and Maluf all testified that the agreement 
between Appellants and Mrs. Cody was that in exchange for taking care of 
Mrs. Cody, Appellants would get the house when Mrs. Cody died. When 
Jjonde Cody was asked if he understood the agreement to be that neither party 
could evict the other from the house, he replied that Mrs. Cody did not explain 
the agreement in that way. Further, Maluf testified that the agreement did not 
grant Appellants the right to live in the house. 
        Disregarding all evidence to the contrary, the evidence supports the jury’s 
finding that there was no agreement between Appellants and Mrs. Cody 
whereby Appellants could not be evicted from the home in exchange for their 
agreement to care for her. Therefore, we find that Appellants failed to 
establish, as a matter of law, that Mrs. Cody entered into an agreement that 
prevented her from evicting Appellants from the home. 
 
 
Factual Sufficiency 
        The issue or point challenging the factual sufficiency of the evidence 
should be that the finding was “against the great weight and preponderance of 
the evidence.” Croucher, 660 S.W.2d at 58. In reviewing an issue asserting 
that an answer is “against the great weight and preponderance” of the
evidence, we must consider and weigh all of the evidence, both the evidence
that tends to prove the existence of a vital fact as well as evidence that tends
to disprove its existence. Ames v. Ames, 776 S.W.2d 154, 158-59 (Tex.
1989), cert. denied, 494 U.S. 1080 (1990); Cain v. Bain, 709 S.W.2d 175,
176 (Tex. 1986). So considering the evidence, if a finding is so contrary to the
great weight and preponderance of the evidence as to be manifestly unjust, the
issue should be sustained, regardless of whether there is some evidence to
support it. Watson v. Prewitt, 159 Tex. 305, 320 S.W.2d 815, 816 (1959)
(op. refusing writ n.r.e.); In re King's Estate, 150 Tex. 662, 244 S.W.2d 660,
661 (1951).
        The only evidence that there was an agreement whereby Mrs. Cody could 
not evict Appellants from the home derives from Paula’s testimony at the trial. 
Paula testified that when she received the warranty deed to the house, Mrs. 
Cody said, “here’s the deed where I’m giving you the house, and here’s the part 
on this other page where you can’t throw me out, that I get to keep the right 
to live in it.” Paula additionally stated that essentially, Mrs. Cody told her “I 
can’t kick you out; you can’t kick me out.” 
        Appellants argue that “[i]t was clearly wrong for the jury to find there 
was no oral agreement allowing [Appellants] to live in the [house] when the 
only evidence presented at trial indicates there was such an agreement.” 
However, the jury did not find, and Appellees do not contend, that Mrs. Cody 
did not allow Appellants to move into her home. The question to the jury asked 
whether there was an oral agreement whereby Appellants could not be evicted 
from the home in exchange for their agreement to care for Mrs. Cody. 
Appellants admit that Mrs. Cody agreed to and understood that only as long as 
Appellants agreed to care for her could they live in the house free of rent until 
Mrs. Cody passed away. It is undisputed that Paula sent a letter to Appellees 
stating that she would not be responsible for “providing [Mrs. Cody] personal 
care in any capacity.” 
         After reviewing and weighing both the evidence that tends to prove the 
existence of such an agreement as well as the evidence that tends to disprove 
its existence, we conclude that the jury’s finding was not contrary to the great 
weight and preponderance of the evidence as to be manifestly unjust. 
 
 
Conclusion
We overrule Appellants’ sole issue and affirm the trial court’s judgment. 

 
                                                                  DIXON W. HOLMAN 
JUSTICE
 
PANEL B:   LIVINGSTON, DAUPHINOT, and HOLMAN, JJ. 
 
DELIVERED: November 6, 2003